```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
SKIPLAGGED, INC.,                                                  :
                                                                   :
                              Plaintiff,                           :
                                                                   :         21 Civ. 5749 (JPC)
                   -v-                                             :
                                                                   :         OPINION AND ORDER
                                                                   :
SOUTHWEST AIRLINES CO.,                                            :
                                                                   :
                              Defendant.                           :
                                                                   :
-------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Between June 8 and July 1, 2021, Southwest Airlines Co. sent Skiplagged, Inc. three cease-and-desist letters alleging breach of contract, trademark infringement, and violations of federal and Texas law. The day after the last of those letters, Skiplagged filed this suit seeking a declaratory judgment that it did not engage in any illegal activity with respect to Southwest's allegations. Southwest then filed suit against Skiplagged in the Northern District of Texas and moved to dismiss Skiplagged's action in New York. Because Skiplagged's suit is an improper anticipatory declaratory judgment action, and thus falls within an exception to the typical rule that the first-filed suit proceeds, the Court grants Southwest's motion to dismiss.

## I. Background[1]

Skiplagged is a "free internet travel information service." Complaint ¶ 1. Incorporated in Delaware and headquartered in Manhattan, *id.* ¶ 3, Skiplagged describes itself as a website which "does not directly sell [Southwest] airline tickets, but rather directs users to other sites to complete purchases for which Skiplagged is paid commissions," Dkt. 13 at 3. Southwest, an airline, is incorporated in Texas and headquartered in Dallas. Complaint ¶¶ 4, 8.

On June 8, 2021, Southwest's in-house counsel sent Skiplagged a cease-and-desist letter. *Id.* ¶ 9; *see also* Dkt. 25 ("Dunwoody Decl."), Exh. A-1 ("June 8 Letter"). The June 8 Letter accused Skiplagged of scraping data from Southwest's website, Southwest.com, and of operating a third-party service using the website's data in violation of the website's Terms and Conditions and Texas law. *Id.* at 1-2, 6-7. The letter further alleged that Skiplagged promoted "hidden-city" tickets[2] in violation of Southwest's Contract of Carriage and infringed Southwest's "heart" trademark. *Id.* at 2-6. The June 8 Letter included a section titled "Legal Ramifications for Failure to Comply" that touted Southwest's "long history of successful litigation" in response to similar activities. *Id.* at 7. The letter also specifically cited the forum selection clause in Southwest website's Terms and Conditions, which places litigation in state or federal court in Dallas, Texas. *Id.* The same section of the letter also stated that the servers Skiplagged accessed were "located

---

[1] The following factual allegations are taken from the Complaint, Dkt. 1 ("Complaint"), and any documents incorporated in the Complaint by reference. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013). When a complaint makes a "clear, definite, and substantial reference" to a document, rather than a "limited quotation," the Court may consider it as incorporated by reference when judging a motion to dismiss. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). Thus, the Court considers the three cease-and-desist letters relied on by the Complaint.

[2] According to Southwest, "[a] hidden-city flight is a flight where you get off at the layover rather than the final destination." June 8 Letter at 2.

2

in the Northern District of Texas." *Id.* The June 8 Letter finally requested that Skiplagged confirm compliance with Southwest's demands by June 24, 2021. *Id.* at 8.

Michael C. Wilson, Esq., an attorney at a litigation firm retained by Southwest, sent Skiplagged a second cease-and-desist letter on June 18, 2021. Complaint ¶ 9; *see also* Dunwoody Decl., Exh. A-2 ("June 18 Letter"). The June 18 Letter recognized that Skiplagged had ceased use of the "heart" trademark, but continued to assert that Skiplagged was scraping Southwest.com and using the data for a third-party service in violation of the website's Terms and Conditions and Texas law. *Id.* at 1-2. In bolded and underlined text, the letter warned that "Skiplagged's failure to cease and desist . . . may result in Southwest pursuing litigation against [Skiplagged] in a Texas federal court and seeking all available relief." *Id.* at 2 (emphasis removed). The letter asserted that "Skiplagged is subject to jurisdiction and venue in the United States District Court for the Northern District of Texas, where Southwest has a long history of successful litigation." *Id.* at 2-3. The letter also cited various specific contacts Skiplagged allegedly had with the Northern District of Texas as well as the aforementioned forum selection clause. *Id.* at 3. It then ordered Skiplagged to preserve documents in anticipation of litigation and to confirm compliance by June 25. *Id.*

On June 21, 2021, Skiplagged sent Southwest a letter denying that it scraped data from Southwest's website or advertised hidden-city Southwest flights. Complaint ¶ 10. On July 1, Wilson responded on behalf of Southwest, arguing that Skiplagged's representations did not suffice for compliance with the company's website's Terms and Conditions. *See* Dunwoody Decl., Exh. A-4 ("July 1 Letter"). The letter also alleged that Skiplagged directed users to Kiwi.com, another service that Southwest had sued, meaning that Skiplagged induced and aided Kiwi.com's breach and tortiously interfered with Southwest.com's Terms and Conditions. *Id.* at 4. And the

3

letter additionally argued that Skiplagged inflated the prices of Southwest fares in violation of federal law. *Id.* The July 1 Letter repeated that "the Website Terms include a forum selection clause of courts in Dallas, Texas," and demanded confirmation of compliance by 5:00 p.m. on July 6, 2021. *Id.*

On the next day, July 2, 2021, Skiplagged initiated this action by filing suit in this District. Skiplagged seeks a declaratory judgment that Skiplagged "is not bound by the Southwest terms and conditions," "has not tortiously interfered with Southwest's contractual relations," "has not induced others to breach their obligations," and "has not violated" federal law. Complaint at 5. The five-page Complaint explicitly states that it was filed in response to "Southwest's threat to sue Skiplagged." *Id.* ¶ 1.

On July 23, 2021, Southwest filed a 52-page complaint against Skiplagged in the United States District Court for the Northern District of Texas (the "Texas Action"). *See* Dkt. 15, Exh. F; Dkt. 1, No. 21 Civ. 1722 (N.D. Tex. July 23, 2021). On August 30, 2021, in this case, Skiplagged moved for a preliminary injunction, asking this Court to enjoin Southwest's prosecution of the Texas Action. Dkt. 13. On October 14, 2021, Skiplagged withdrew its application for injunctive relief after the motion was "effectively moot[ed]" by a stay entered in the Texas Action. Dkts. 40, 41.

On September 10, 2021, Southwest moved to dismiss this case as an improper anticipatory declaratory judgment action, as well as for lack of personal jurisdiction and for lack of venue. Dkt. 24 at 10-21. In the alternative, Southwest moved to transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). *Id.* at 21-30. Skiplagged opposed on September 27, 2021, Dkt. 34 ("Opposition"), and Southwest replied on October 8, 2021, Dkt. 39.

## II.     Analysis

"As a general rule, where there are two competing lawsuits, the first suit should have priority." *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (cleaned up). This general rule has two exceptions: "(1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." *Id.* at 275 (cleaned up). An "improper anticipatory declaratory judgment action" falls into the second exception; in such cases, "a district court may dismiss the first-filed case" without analyzing the balance of convenience. *Id.* Such action is one "filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action" and "deprive[s] the 'natural plaintiff' of its choice of forum." *Id.* at 276 & n.4.

In particular, "[w]hen a notice letter informs a defendant of (1) the intention to file suit, (2) a filing date, and/or (3) a specific forum for the filing of the suit, the courts have found, in the exercise of discretion, in favor of the second-filed action." *Cephalon, Inc. v. Travelers Cos.*, 935 F. Supp. 2d 609, 614 (S.D.N.Y. 2013) (cleaned up) (collecting cases); *see also BuddyUSA v. Recording Indus. Ass'n of Am.*, 21 Fed. App'x 52, 55-56 (2d Cir. 2001) (same). "While it may be preferable for the notice to cover all three bases, any of these factors is sufficient to provide adequate notice," and "[w]here courts have entertained a declaratory judgment despite the plaintiff's receipt of pre-suit correspondence, all three indicia of impending litigation have been absent." *Cephalon, Inc.*, 935 F. Supp. 2d at 614. In those cases, the correspondence may "merely seek[] information or serve[] to further settlement negotiations," not "convey[] a specific threat of litigation." *Liberty Mut. Ins. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 394 (S.D.N.Y. 2014) (quotation omitted).

Applying these standards, the Court dismisses Skiplagged's action.  Southwest's cease-and-desist letters identified specific causes of action that Southwest may pursue against Skiplagged, set deadlines for Skiplagged to comply with the demands in those letters, and referenced the legal propriety of bringing litigation against Skiplagged in the Northern District of Texas.  *See* June 8 Letter at 1; June 18 Letter at 1-3; July 1 Letter at 1-2, 4.  Skiplagged's argument that Southwest's letters did not actually present it with a "credible threat of impending litigation," principally because the threats of litigation were not sufficiently explicit, Opposition at 18-19, is not persuasive.

To start, the three cease-and-desist letters each identified the Northern District of Texas as the specific forum where Southwest would bring suit against Skiplagged if necessary.  *See* June 8 Letter at 7; June 18 Letter at 3; July 1 Letter at 4.  The letters quoted the forum selection clause in Southwest.com's Terms and Conditions, and further alleged unlawful activity that occurred in that District.  *See* June 8 Letter at 7-8; June 18 Letter at 3; July 1 Letter at 4.  For instance, the July 18 Letter stated that "Skiplagged is subject to jurisdiction and venue in the Northern District of Texas because Skiplagged is unlawfully accessing Southwest's servers located in the Northern District of Texas, scraping data from Southwest's Website, republishing Southwest's fare information, and targeting Texas customers with geographically-restricted online ads."  June 18 Letter at 3.

And each letter made clear that litigation was likely absent Skiplagged's compliance with the demands in the cease-and-desist letters, by identifying the grounds for litigation and, in some instances, pointing to lawsuits previously filed for similar conduct.  In the June 8 Letter, Southwest identified specific potential causes of action against Skiplagged: trademark infringement and breach of contract.  June 8 Letter at 3, 6.  The June 8 Letter also included an entire section labeled "Legal Ramifications for Failure to Comply" which further articulated Southwest's potential

6

grounds for filing suit. *Id.* at 7. And the letter provided a list of lawsuits brought by Southwest raising similar claims, reinforcing its seriousness in pursuing litigation against Skiplagged if necessary. *Id.* The June 18 Letter had bolded and underlined text warning that "failure to cease and desist . . . may result in . . . litigation against [Skiplagged] in a Texas federal court," referenced "Southwest's potential claims against" Skiplagged, and called for the preservation of evidence "[i]n light of the potential for litigation." June 18 Letter at 2-3. In the July 1 Letter, which emphasized that Skiplagged's conduct was not "lawful or acceptable," Southwest accused Skiplagged of breach of contract, of inducing Kiwi.com to breach its website's Terms and Conditions, of tortious interference with those Terms, of aiding and abetting a breach of the Terms, and of engaging in deceptive and misleading practices in the sale of air transportation in violation of federal law. July 1 Letter at 4. And that letter additionally noted Southwest's pending lawsuit against Kiwi.com, which "raises similar claims." *Id.*; *see also id.* at 1 ("As you may know, Southwest filed a federal lawsuit against Kiwi.com due to its unauthorized marketing and sale of Southwest flights that included, among other things, a claim for breach of the Website Terms."). Cases in which courts have declined to apply the anticipatory filing doctrine have lacked such clear threats of litigation.[3]

---

[3] *See, e.g., Fit & Fun Playscapes, LLC v. Sensory Path, Inc.*, No. 19 Civ. 11697 (NSR), 2022 WL 118257, at *9 (S.D.N.Y. Jan. 12, 2022) (not applying the doctrine when a pre-suit letter did not "mention a specific forum" and included "vague language denot[ing] uncertainty" as to whether the party would seek litigation or non-litigation remedies); *Berkley Assurance Co. v. MacDonald-Miller Facility Sols., Inc.*, No. 19 Civ. 7627 (JPO), 2019 WL 6841419, at *7 (S.D.N.Y. Dec. 16, 2019) (not applying the doctrine when one email in a mediation vaguely warned that the opposing party would "suffer the consequences of Washington's coverage law" if it did not give in); *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11 Civ. 8751 (PAE), 2012 WL 844284, at *6 (S.D.N.Y. Mar. 13, 2012) (not applying the doctrine when pre-suit letters "were . . . imprecise with respect to the date and venue of . . . a lawsuit," "did not identify the claim," and were followed by "negotiations").

The circumstances of Skiplagged's filing of this action further weigh heavily in favor of dismissal on improper anticipatory filing grounds. Skiplagged filed a one-count declaratory judgment action the day after Southwest sent its final cease-and-desist letter on July 1, 2021. *See, e.g., Dish Network, L.L.C. v. Am. Broad. Cos.*, No. 12 Civ. 4155 (LTS), 2012 WL 2719161, at *1, *4-6 (S.D.N.Y. July 9, 2012) (dismissing a case filed the "following day" after reports of an imminent lawsuit). Skiplagged's Complaint is a mere five pages, despite seeking declaratory judgment on a variety of complex issues, which is "indicative of hasty preparation" that was "motivated by a fear of imminent legal action." *Id.* at *4 (dismissing a thirteen-page complaint); *see also Scholastic, Inc. v. Daemmrich*, No. 15 Civ. 9550 (VSB), 2017 WL 2484206, at *4 (S.D.N.Y. June 8, 2017) (dismissing a ten-page complaint that lacked adequate specificity). In fact, Skiplagged explicitly recognized in its Complaint that this case "ar[ose] from Southwest's threat to sue Skiplagged." Complaint ¶ 1. And after the case was filed, Southwest actually did file a 52-page complaint against Skiplagged in Texas federal court. *See* Dkt. 15, Exh. F.[4]

Skiplagged additionally argues that the anticipatory filing doctrine does not apply "when the second-filed court lacks jurisdiction." Opposition at 18. Skiplagged's position has no support in the case law.[5] A court dismissing pursuant to the anticipatory filing doctrine "need not reach the issue" of which venue is superior from the standpoints of convenience and personal jurisdiction. *Louise Paris, Ltd. v. Fabric Selection, Inc.*, No. 17 Civ. 5697 (JSR), 2017 WL 4776734, at *3-4 (S.D.N.Y. Oct. 6, 2017); *see also BuddyUSA*, 21 Fed. App'x at 55-56 (not listing

---

[4] Skiplagged argues that its disagreements with Southwest on the merits and on the existence of jurisdiction in Texas undermine the credibility of Southwest's letters. Opposition at 18-19. But if anything, serious disagreement on litigation's likelihood of success arguably *increases* the likelihood of a lawsuit, rather than a negotiated resolution.

[5] The case Skiplagged cites, *Employers Insurance of Wausau*, 522 F.3d at 277, lists no such requirement. *See* Opposition at 18.

personal jurisdiction as a relevant factor); *Cephalon, Inc.*, 935 F. Supp. 2d at 614 (same).  If Skiplagged believes that it is not susceptible to personal jurisdiction in Texas, it may seek relief in the Texas Action.[6]

### III. Conclusion

Thus, Southwest's motion to dismiss is granted.  The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 23 and 42 and to close this case.

SO ORDERED.

Dated: June 30, 2022
New York, New York

JOHN P. CRONAN
United States District Judge

---

[6] Because the Court grants the motion to dismiss on improper anticipatory filing grounds, it does not reach Southwest's alternative arguments for dismissal for lack of personal jurisdiction and for lack of venue, nor does it reach Southwest's motion to transfer venue.  Similarly, Skiplagged's request for the Court to take judicial notice of a settlement in Southwest's suit against Kiwi.com, Dkt. 42, is not relevant to resolving the motion to dismiss on improper anticipatory filing grounds and is thus denied as moot.